NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0795n.06

No. 07-5540

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Dec 28, 2010**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellee*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF KENTUCKY |
| | ) | |
| **DARIOUS D. EDMUNDSON**, | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellant*. | ) | |

BEFORE:    COLE and WHITE, Circuit Judges; and O'MEARA, Senior District Judge.[*]

**COLE, Circuit Judge.**  Darious D. Edmundson appeals the denial of his motion to suppress evidence discovered in a search incident to his arrest for disorderly conduct.  We **AFFIRM** the district court's order for the reasons that follow.

## I.  BACKGROUND

On March 24, 2006, an officer in the Frankfort Police Department responded to a distress call from a person who had identified himself over the phone as Tony Smith and claimed that armed individuals in his home were trying to kill him.  When the officer arrived at the multi-unit apartment complex where the caller had indicated that he lived, the officer heard a man screaming at the top of his lungs out of a window, while striking the drawn window blinds.  The man was yelling

_____

[*] The Honorable John Corbett O'Meara, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

continuously "[h]elp me, they are going to kill me . . . [t]hey have got a gun." (*Id.* at 6-7.) The door to the apartment where the screams were coming from was locked and the situation appeared exigent, so the officer kicked open the door. Once inside, the officer saw a shirtless man, later identified as Edmundson, charging down the stairs of the apartment towards him. At the bottom of the stairs Edmundson screamed that armed assailants intent on killing him were "trying to get out the back door." (*Id.* at 11.) When the officer could see Edmundson's hands, the officer raised his weapon and repeatedly told Edmundson to get down. Then the officer pushed Edmundson down so that he lay in the living room of the apartment; Edmundson continued to scream. A moment later, Edmundson's girlfriend, Stacy Reffett, came into the officer's view at the top of the stairs. The officer asked Reffett if anyone else was in the apartment; when she replied that she and Edmundson were the only persons in the house, the officer handcuffed Edmundson. With Edmundson restrained, the officer pulled him out onto the steps in front of the apartment and noticed that some of Edmundson's neighbors had exited their homes to watch the scene. On the steps, the officer informed Edmundson that he was under arrest for disorderly conduct. The officer searched Edmundson and uncovered a gun clip, a knife, U.S. currency, a bag of crack cocaine, and a bag of powder cocaine.

The discovery of these items led to federal charges against Edmundson for possession of cocaine base and powder cocaine with intent to distribute, and for possessing a firearm after having been convicted of a felony offense. Edmundson filed a motion to suppress the confiscated contraband, which the district court denied. This appeal followed.

**II. ANALYSIS**

**A.    Standard of Review**

In reviewing the denial of a motion to suppress we uphold a district court's factual findings unless clearly erroneous, affirm the district court's order on any grounds supported by the record, and consider questions of law de novo. *See United States v. Quinney*, 583 F.3d 891, 893 (6th Cir. 2009); *United States v. Allen*, 106 F.3d 695, 700 n.4 (6th Cir. 1997). We evaluate evidence supporting the district court's determination "in the light most likely to support the district court's decision." *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999) (internal quotation marks omitted).

**B.    Probable Cause**

Edmundson's federal convictions stem from the fruits of a search conducted after his arrest for disorderly conduct in violation of Kentucky law. The constitutionality of that arrest is the only issue raised by this appeal.

A person commits the offense of disorderly conduct in Kentucky where "in a public place and with intent to cause public inconvenience, annoyance or alarm, or wantonly creating a risk thereof, he [e]ngages in fighting or in violent, tumultuous, or threatening behavior; [or] . . . [m]akes unreasonable noise." Ky. Rev. Stat. Ann. § 525.060(1) (West 2006). The district court found that the officer had probable cause to arrest Edmundson for disorderly conduct because Edmundson was engaging in tumultuous behavior and making unreasonable noise in a public place which wantonly created a risk of public annoyance or alarm. This was error, contends Edmundson; probable cause did not exist because the noise and commotion the district court relied on in support of its holding

occurred in Edmundson's home. Conduct in private quarters cannot ripen into disorderly conduct, the argument goes, because Kentucky law requires that disorderly acts occur in a public place.

But Kentucky's proscription of disorderly conduct is broader than Edmundson admits. While it is true that disorderly conduct must occur in a public place, such an act is "deemed to occur in a public place if it *produces its offensive or proscribed consequences in a public place*." Ky. Rev. Stat. Ann. § 525.010(3) (West 2006) (emphasis added). Here, the officer testified that from the parking lot outside the multi-unit apartment building in which Edmundson lived, he heard a man screaming at the top of his lungs out the window of Apartment 14 while hitting the window blinds. Edmundson does not contest that the parking lot from which the officer heard his screams is a public place within the meaning of section 525.010(3), nor could he, as "portions of apartment houses . . . not constituting . . . apartments designed for actual residence" and locations to which "the public or a substantial group of persons has access" are public places, *id.*; *see also Woosley v. City of Paris*, 591 F. Supp. 2d 913, 920 (E.D. Ky. 2008) (finding a lawn outside an apartment building a public place under section 525.060). Because Edmundson's loud cries of "help me, they are going to kill me . . . [t]hey have got a gun" produced their offensive consequences in a public place, the officer had probable cause to arrest Edmundson for disorderly conduct.

The balance of Edmundson's brief urges that his arrest for disorderly conduct was unsupported by probable cause because no evidence in the record shows that Edmundson's screams were causing, or could reasonably be perceived to create a risk of causing, public alarm or annoyance. Of particular significance, on this view, is the timing of Edmundson's arrest, and of the officer's observation that

Edmundson's neighbors emerged from their apartments to witness the commotion from the parking lot.

At the suppression hearing, the officer testified that he placed Edmundson under arrest for disorderly conduct after Edmundson's girlfriend assured him that no one else was in the house, at which point the officer knew that Edmundson's fear of being murdered was not likely grounded in fact.[1] The record does not make clear precisely when the officer noticed that Edmundson's screams had attracted an audience in the parking lot outside the apartment complex, *i.e.*, directly before or after the officer arrested Edmundson. However, contrary to Edmundson's assertions, probable cause in this case does not turn on *when* the officer noticed the neighbors or even whether the neighbors emerged from their apartments at all. "[P]robable cause 'requires only a *probability or substantial chance* of criminal activity, not an actual showing of such activity.'" *United States v. McClain*, 444 F.3d 556, 563 (6th Cir. 2005) (emphasis added) (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)). An arresting officer has probable cause where he has "less than prima facie proof but more than mere suspicion" of criminal activity. *Id*. at 562. On this record, the officer had probable cause to believe that there was a substantial chance that Edmundson screaming—falsely—that someone was trying to kill him, and then later, that the imaginary assailants were going to escape, would cause public alarm or annoyance in violation of section 525.060. This is true whether or not Edmundson's neighbors chose to leave their residences to observe the scene. That Edmundson's neighbors ultimately did leave their homes to investigate shows that the officer's belief that Edmundson's

---

[1] The officer later learned that Edmundson was under the influence of narcotics and in the grips of a paranoid episode during the incident that led to his arrest.

screams would probably alarm his neighbors was more than just reasonable—it was accurate.  The officer thus had probable cause to arrest Edmundson and the district court properly denied the motion to suppress.

## V.  CONCLUSION

As Edmundson's arrest was supported by probable cause, we **AFFIRM** the district court's denial of the motion to suppress.