HELENE N. WHITE, Circuit Judge,
concurring in part and dissenting in part.
I respectfully dissent regarding the claim that Defendants violated the Fourth Amendment by their warrantless entry and search of the Alford home.
Meier entered 12941 Northfield without a warrant and encountered Alford II inside the back door. Subsequently, other officers entered the house and conducted a search of the premises, also without a warrant. The district court held that this search, though warrantless, was justified *162 by the exigency exception to the Fourth Amendment’s warrant requirement.
In most circumstances, the Fourth Amendment prohibits warrantless entry of police into a person’s home. Kyllo v. United States, 533 U.S. 27, 31, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001); Illinois v. Rodriguez, 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). “Warrant-less entries are permitted, however, where ‘exigent circumstances’ exist.” Ewolski v. City of Brunswick, 287 F.3d 492, 501 (6th Cir.2002). “Exigent circumstances exist where there are ‘real immediate’ and serious consequences that would certainly occur were a police officer to ‘postpone[] action to get a warrant.’” Id. (quoting O’Brien v. City of Grand Rapids, 23 F.3d 990, 997 (6th Cir.1994) (alteration in original) (some internal quotation marks omitted)). “The relevant inquiry is whether the facts are such that an objectively reasonable officer confronted with the same circumstances could reasonably believe that exigent circumstances existed.” Id. Under the exigency exception, “police may ‘enter a residence without a warrant if there is probable cause to believe that there is a burglary in progress.’ ” United States v. McClain, 444 F.3d 556, 562 (6th Cir.2005) (quoting United States v. Reed, 141 F.3d 644, 649 (6th Cir.1998)). Although both probable cause and exigency are needed under this rule, “when the police have probable cause to believe that a burglary is in progress, they are also confronted with the necessary exigency, that is, the need ‘to ensure the protection of everyone on the scene and to prevent the loss or destruction of the owner’s property.’ ” Id. (quoting United States v. Johnson, 9 F.3d 506, 510 (6th Cir.1993)). “The establishment of probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.” Johnson, 9 F.3d at 509.
The district court held that the initial entry into the Alford home was justified by exigent circumstances because
defendants were responding to a 911 report of a possible home invasion. The person calling the tip stated that he was a neighbor of Alford Sr. and gave his name and address, and the basis for his belief that the Alford home was being invaded, which gave the officers probable cause to enter the home. The fact that the neighbor was incorrect, that the Alford home was not being invaded, that Alford II was legitimately there, and that the neighbor thought that the residents of the house were white, does not make the officer’s conduct in entering the home unreasonable.
Alford, 2009 WL 1299568, at *10. I disagree, and would find that the officers did not have probable cause to enter Alford Sr.’s home.
In United States v. McClain, 444 F.3d 556 (6th Cir.2005), this court held that
a neighbor’s phone call indicating that the owners had moved out of the house ... several weeks earlier and that there was a light on in the house that had not been on before, even coupled with the officers’ discovery of a slightly ajar front door, does not present the type of objective facts necessary to establish probable cause that a burglary was in progress at the house. Under similar circumstances, our precedent has required more-namely, the existence outside the searched premises of some physical signs of a burglary or some direct evidence of a home invasion.
Id. at 563. In Johnson, by contrast, a neighbor called to report a burglary in progress and “reported seeing individuals crawl through the window. 9 F.3d at 507. When the officers arrived at the residence, they discovered that the doors were locked and that a kitchen window had a broken *163 pane.” Id. The officers saw individuals inside the home through the broken window and, after speaking to them, determined that their explanations of why they were in the house were not credible. Id. at 507, 509-10. These facts, in combination, created probable cause to believe a burglary was in progress, and thus exigency to enter the house. Id. at 509-10.
Here, as in Johnson, police received a credible phone tip from a neighbor about a burglary in progress: the neighbor stated that he saw someone enter the back gate of the house who he did not think was a resident and provided a physical description of that person. However, as in McClain, police encountered no signs of forced entry when they arrived at the house, nor did they see anyone inside the house until Officer Meier entered through the back door. The phone call did provide some “direct evidence of a home invasion,” McClain, 444 F.3d at 563, but not as much as in Johnson,[1]
Probable cause is defined as “reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion,” and “police must have an objectively reasonable basis for their belief that a crime is being committed.” McClain, 444 F.3d at 562-63 (citations and internal quotation marks omitted). That standard is not satisfied here. The phone call tip, which included information about the identity of the caller and the basis of his belief that a burglary was in progress, did contain some indicia of reliability in support of probable cause. Cf. Florida v. J.L., 529 U.S. 266, 270, 273-74, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) (requiring that anonymous tips must provide indicia of reliability in order to provide reasonable suspicion for a Terry stop and frisk). But see Thacker v. City of Columbus, 328 F.3d 244, 254 (6th Cir.2003) (declining to find that “a 911 call alone may justify a war-rantless entry into a private home” under the exigency exception for protecting the police or others from a risk of danger). On the other hand, the lack of evidence of forced entry, such as a broken window or a splintered door jamb, weighs against finding probable cause, although it is not determinative. See United States v. Brown, 449 F.3d 741, 748-49 (6th Cir.2006) (“[I]t is the totality of the circumstances and not the presence of pry marks or a broken window that is determinative” in “establishing] probable cause to believe a burglary [is] in progress.”) In Brown, an officer (Edmonds)
responded to a burglar alarm that he knew had been triggered twice in a relatively short period of time and arrived within just a few minutes of the first activation. He was not met by a resident of the house, but by the neighbor who directed him to the basement door. The sounding alarm, the lack of response from the house, and the absence of a car in the driveway, made it less likely that this was an accidental activation. Investigating, Edmonds found the front door secured but the basement door in the back standing ajar. While Edmonds did not find a broken window or pry marks on the open door, it was objectively reasonable for him to believe that this was not a false alarm but, rather, that the system had recently been triggered by unauthorized entry through the open basement door. These circumstances, including the re *164 cently activated basement door alarm and evidence of a possible home invasion through that same door, establish probable cause to believe a burglary was in progress and justified the warrantless entry into the basement.
Id. at 748^49. In the instant case, Meier responded to a credible 911 call and, on arriving at the house, observed that the back door was open (like in Brown), but the screen door was closed. However, the 911 call, alone, was insufficient to create probable cause. Police had not received information that the security alarm at the house had been triggered and could see no signs of forced entry. Further, while the 911 caller stated a basis for his belief that a burglary was in progress — that he had seen a man walk toward the back entrance of the house, which was hidden from his view by a fence — that basis was not as compelling or substantive as the basis in Johnson, where the caller reported seeing individuals crawl through the window. 9 F.3d at 507. Although the 911 call here likely did create reasonable suspicion that a crime was in progress, nothing that officers encountered outside 12941 Northfield provided information allowing that suspicion to ripen into probable cause. Thus, in the absence of any signs of a burglary, the warrantless entry into the house was not reasonable.
I would further hold that Meier and the other officers who entered the house are not entitled to qualified immunity. The standard for warrantless entry on suspicion of a burglary in progress is clearly established, see McClain, 444 F.3d at 562; Johnson, 9 F.3d at 510, and it should have been “clear to a reasonable officer that his conduct [warrantless entry onto the premises] was unlawful in the situation he confronted,” Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). It is clearly established law that exigent circumstances in a case such as this require probable cause to believe a burglary is in progress. Officers are frequently called upon to determine whether probable cause exists that a crime is being committed, and are no strangers to that inquiry. Qualified immunity is therefore inappropriate on this issue.

. The 911 caller, Avery, apparently based his suspicion that a burglary was in progress on his mistaken belief that the residents of 12941 Northfield were White. There is no evidence, however, that the responding officers knew of Avery's basis for making the call until after they arrived at and searched the house. Further, the race of the person hardly seems relevant.