NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0438n.06

No. 18-3900

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Aug 21, 2019

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| KENNETH RAY EVANS, | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellant. | ) | |

Before:  CLAY, LARSEN, and READLER, Circuit Judges.

LARSEN, Circuit Judge.  A police officer found Kenneth Evans unconscious from a drug overdose.  After rendering medical assistance, the officer collected Evans' cell phone to safeguard potential evidence of drug trafficking.  Another officer then put the phone on airplane mode to prevent its contents from being erased remotely.  In doing this, the officer glimpsed a thumbnail image of a topless, prepubescent girl.  After law enforcement secured a warrant to search Evans' phone for evidence of drug trafficking and child pornography, a forensic search disclosed over 500 images of child pornography stored on the phone.

Evans moved to suppress the child pornography as the fruit of an unconstitutional search. The district court denied the motion, holding that law enforcement had not conducted an "intentional search" in violation of the Fourth Amendment.  Alternatively, the district court held that the inevitable-discovery doctrine precluded suppression because law enforcement would have discovered the child pornography when searching Evans' phone for evidence of drug trafficking.

Because the district court did not apply the right Fourth Amendment standard or create a record sufficient for review of its inevitable-discovery determination, we VACATE the district court's judgment and REMAND for further proceedings.

I.

Responding to a report of a possible drug overdose, Officer Mark Fetheroff of the Mentor Police Department discovered Evans unconscious in the backseat of a car. Fetheroff ensured that Evans received medical care and then questioned the car's driver, Jessica Corby. Corby denied knowing Evans; she said that she had seen him struggling to walk and had offered to drive him to a hospital. Corby then let Fetheroff search her car. On the backseat, he saw an iPhone, displaying an unread text from a person named "Max." Corby told Fetheroff the phone belonged to Evans. With Corby's permission, Fetheroff then searched Corby's own cell phone and discovered that she had also just received a text from "Max." At that point, Corby admitted that she had lied, and that "Max" had sent her to pick up Evans.

Fetheroff suspected that Evans' phone might contain evidence of drug-trafficking activity, so he took it to the police station's evidence processing room. There, Detective Matthew Alvord, sought to put Evans' phone in airplane mode, which would disable the phone's wireless transmission functions. Alvord did this to prevent evidence on the phone from "remotely being tampered with or wiped" before the police could secure a warrant to search the phone's contents. By placing the phone in airplane mode, Alvord acted pursuant to law enforcement policy directing officers to "place [a seized] phone in airplane mode if [they] are able to." Alvord was trained to first put a seized phone in airplane mode and then power it down.

Alvord used a Google Android as his primary cellular phone, and he had no specific training in how to enable airplane mode on an Apple iPhone 7, Evans' model of phone. But Alvord

2

knew that he could enable airplane mode via the settings application. To accomplish this, Alvord first hit the "home" button, which brought the phone out of dormant mode. Alvord then swiped left on the screen, trying to find the settings application. Instead, this action opened camera mode. Unbeknownst to Alvord, Evans' phone was not locked or password protected. Because Evans' phone was not password protected, camera mode revealed a thumbnail image—in the bottom left-hand corner of the screen—of the most recent picture from the phone's photo gallery. The image showed a topless, prepubescent girl wearing bikini underwear.

Alvord exited camera mode by pushing the power button. Then, still trying to find the settings application, he double-tapped the home button. This action opened the most recent application Evans had used—the photo application—revealing several pictures, including, again, the photograph of the topless young girl. After exiting the photo application, Alvord was able to access the settings application and successfully activate airplane mode.

Alvord later prepared an affidavit, requesting a warrant to search Evans' phone. The affidavit first affirmed that there was probable cause to believe that the phone "contain[ed] data relating to an investigation of drug activity: names, contacts, telephone numbers, text messages, emails, [and] dates and times of communication." Second, the affidavit affirmed that there was probable cause to believe that the phone "contain[ed] images, both moving and still pictures, text messages, picture messages/emails and or other digital evidence, metadata[,] and attributes linking" Evans to child pornography. Based on Alvord's affidavit, a judge approved a warrant to search Evans' phone for the items described. The same day, the Mentor Police Department and the FBI executed the search warrant. A forensic analysis of the phone revealed the presence of digital files containing over 500 images of real minors engaged in sexually explicit conduct.

A federal grand jury later indicted Evans for knowingly receiving and distributing files containing pictures of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2). Evans moved to suppress the evidence seized from his phone, arguing that the police failed to use the least intrusive means to secure the potential evidence on the phone. For instance, Evans argued the officers could have secured the phone using a Faraday Bag.[1] Moreover, Evans produced an expert witness who testified that accessing the settings application on an iPhone 7 would not require swiping left as Alvord had done. The expert also testified that accessing the settings application was not the most efficient way of enabling airplane mode on the iPhone 7; Alvord could instead have enabled airplane mode by swiping up (rather than left) on the home screen and then tapping the control center's airplane mode icon.

Based on this evidence, Evans argued that Alvord had searched his phone in violation of the Fourth Amendment because the detective's conduct allowed him to view the phone's pictures without a warrant. Because the search-warrant affidavit relied on the allegedly unlawful search, Evans urged the court to suppress the child pornography recovered from his phone as fruit of the poisonous tree.

The district court denied the motion. The district court held that Alvord had not conducted an "intentional search" in violation of the Fourth Amendment. The court also held that suppression was unnecessary under the inevitable-discovery doctrine because police would have found the child pornography when searching Evans' phone for drug-trafficking evidence. Evans ultimately pleaded guilty, reserving his right to appeal the district court's evidentiary ruling. The court sentenced Evans to seventy months' imprisonment, and Evans now appeals.

---

[1] Faraday Bags "are essentially sandwich bags made of aluminum foil" that can be used to "isolate[] the phone from radio waves." *Riley v. California*, 573 U.S. 373, 390 (2014).

II.

We review the district court's factual findings for clear error and its conclusions of law and application of the law to the facts de novo. *United States v. Lichtenberger*, 786 F.3d 478, 481 (6th Cir. 2015). We may affirm the district court's denial "on any ground supported by the record and may consider . . . evidence [in the record] in addition to evidence considered at the suppression hearing." *United States v. Binford*, 818 F.3d 261, 267 (6th Cir. 2016). In doing so, we view all evidence in the light most favorable to the government. *United States v. Pearce*, 531 F.3d 374, 379 (6th Cir. 2008).

III.

Evans argues that the district court erred in basing its Fourth Amendment determination on Alvord's subjective intent. Evans is right. The district court held that Alvord did not commit a Fourth Amendment violation because he did not *intend* to conduct a search. But "the subjective intent of the law enforcement officer is irrelevant in determining whether that officer's actions violate the Fourth Amendment." *Bond v. United States*, 529 U.S. 334, 338 n.2 (2000). The government does not dispute this point. Instead, the government argues that, under the Supreme Court's decision in *Riley v. California*, 573 U.S. 373 (2014), Alvord's conduct did not violate the Fourth Amendment. Should we hold otherwise, the government contends that the good-faith exception to the exclusionary rule, *see United States v. McClain*, 444 F.3d 556 (6th Cir. 2005); *Herring v. United States*, 555 U.S. 135 (2009), precludes suppression. Lastly, the government urges that we affirm the district court's application of the inevitable-discovery doctrine under *Nix v. Williams*, 467 U.S. 431 (1984).

Because it applied the wrong Fourth Amendment standard, the district court never decided the legitimacy of Alvord's conduct under *Riley*. Nor did the court rule on the applicability of the

good-faith doctrine under *McClain* or *Herring*. The district court *did* rule on inevitable discovery. But the court raised the issue *sua sponte*, without developing a record sufficient for us to decide whether the relevant evidence would, in fact, have been inevitably discovered. We do not know, for example, whether any child pornography was embedded in the "text messages" and "emails" that the police were plainly authorized to search for evidence of drug trafficking or, similarly, whether their ability to search for other items, such as "names" or "contacts," would have allowed the police to inspect the phone's photo gallery. Indeed, we do not know where on the phone the images were stored. Nor do we know whether the police would have requested a broader warrant to search for evidence of drug trafficking absent the discovery of child pornography on Evans' phone. In our view, the outcome of the inevitable-discovery analysis turns on these factual issues.

The limited record also inhibits our ability to decide the Fourth Amendment and good-faith questions in the first instance. In *Riley*, the Supreme Court acknowledged that "specific concerns about the potential loss of evidence in a particular case" could justify intrusions into a phone based on an "exigent circumstances" rationale. 573 U.S. at 391. The Court indicated that such intrusions could require a "few necessary steps," and that courts should review the reasonableness of those steps under *Illinois v. McArthur*, 531 U.S. 326 (2001), which "approved officers' reasonable steps to secure a scene to preserve evidence while they awaited a warrant." *Riley*, 573 U.S. at 391. The steps Alvord took to enable airplane mode via the settings application would seem to require scrutiny under *McArthur*. But *McArthur* outlined a fact-intensive, multi-factor analysis for which the current record is altogether unsuited.[2]

---

[2] In *McArthur*, police prevented a suspect from entering his trailer unaccompanied until they could secure a warrant to search it for contraband. 531 U.S. at 329. The Court found the police's actions to be reasonable and noted four factors supporting this conclusion: (1) the police had probable cause to believe the trailer contained evidence of a crime; (2) the police had "good reason to fear that" the defendant would destroy the evidence if allowed in the trailer unaccompanied; (3) "the police made reasonable efforts to reconcile their law enforcement needs with the demands of

Holes in the record would likewise complicate a good-faith analysis under this court's decision in *McClain*. *McClain* held that the good-faith exception, derived from *United States v. Leon*, 468 U.S. 897 (1984), "can apply in a situation in which the affidavit supporting the search warrant is tainted by evidence obtained in violation of the Fourth Amendment." 444 F.3d at 565.[3] *McClain* limited its holding to circumstances where "the facts surrounding the initial Fourth Amendment violation were 'close enough to the line of validity'" to make reliance on the warrant "objectively reasonable." *Id.* at 566 (quoting *United States v. White*, 890 F.2d 1413, 1419 (8th Cir. 1989)). And *McClain* suggested that an "important[]," though perhaps not dispositive, factor in its analysis was that "the officers who sought and executed the search warrants were not the same officers who performed the initial warrantless search." *Id.* Here, we know that Alvord both engaged in the initial intrusion into Evans' phone and secured the warrant. But did Alvord participate in the execution of that warrant? We do not know. All we know is that the Mentor Police Department and the FBI were involved.

Under these circumstances, it is appropriate for us to remand to the district court. *Cf. United States v. Carr*, 355 F. App'x 943, 946 (6th Cir. 2009) ("[T]he district court is more familiar with the relevant evidence, has had an opportunity to observe the witnesses and evaluate their credibility, and has the ability to take additional testimony to develop the record further . . . .").

---

personal privacy" by "impos[ing] a significantly less restrictive" measure than arresting the defendant or performing a warrantless search of the trailer; and (4) "the police imposed the restraint for a limited period of time." *Id.* at 331–32. We wonder, moreover, whether these factors implicate (or overlap with) the Supreme Court's longstanding doctrine "that searches and seizures based on mistakes of fact can be reasonable." *See Heien v. North Carolina*, 135 S. Ct. 530, 536 (2014); *Illinois v. Rodriguez*, 497 U.S. 177, 183–86 (1990). After all, Alvord only glimpsed the child pornography because he made a *mistake*—swiping left was not, as he believed, a way to access the settings application and enable airplane mode.

[3] We note that the *McClain* rule is subject to a deep circuit split. *See, e.g.*, *United States v. Loera*, 923 F.3d 907, 926 (10th Cir. 2019) (collecting cases).

On remand, "the parties and district court should develop a more thorough factual record" to decide the legal issues we have discussed insofar as they are necessary to the outcome. *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 433 (6th Cir. 2014) (en banc).

* * *

For the foregoing reasons, we VACATE the district court's judgment and REMAND for further proceedings consistent with this opinion.