*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0184p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 05-5437

DOIS EDWARD BROWN,

*Defendant-Appellant.*

>

Appeal from the United States District Court
for the Eastern District of Kentucky at Pikeville.
No. 04-00009—David L. Bunning, District Judge.

Submitted: April 26, 2006

Decided and Filed: May 31, 2006

Before: GUY, DAUGHTREY, and CLAY, Circuit Judges.

———————————

**COUNSEL**

**ON BRIEF:** Stephen W. Owens, STEPHEN W. OWENS LAW OFFICE, Pikeville, Kentucky, for
Appellant. Charles P. Wisdom, Jr., ASSISTANT UNITED STATES ATTORNEY, Lexington,
Kentucky, for Appellee.

———————————

**OPINION**

———————————

RALPH B. GUY, JR., Circuit Judge. Defendant Dois Edward Brown appeals from the denial
of his motion to suppress evidence obtained as a result of a warrantless entry into his home by a
police officer responding to the reported activation of his home security system. Having preserved
the issue by entering a conditional plea of guilty, defendant argues that the district court erred in
finding (1) that the officer's entry into the basement was justified under the exigent circumstances
exception to the warrant requirement, and (2) that the officer's entry into the interior room of the
basement did not exceed the scope of the exigency. In that interior room, the officer found
approximately 176 marijuana plants in plain view. After review of the record and the arguments
presented on appeal, we affirm.

**I.**

After the marijuana was discovered in defendant's basement on April 7, 2004, police secured the premises and obtained a search warrant. A three-count indictment was returned, charging defendant with the unlawful manufacture of 100 or more marijuana plants, possession with intent to distribute marijuana, and criminal forfeiture of real property used or intended to be used to facilitate a drug offense. 21 U.S.C. §§ 841(a)(1) and 843. Defendant moved to suppress the evidence on the grounds that the warrantless entry and search violated his Fourth Amendment rights.

An evidentiary hearing was held August 2, 2004, supplemental briefs were received in September 2004, and the district court denied the motion to suppress for the reasons stated in the written decision entered on October 15, 2004. Defendant filed a motion to reconsider and reopen the evidentiary hearing, which was denied on November 15, 2004.

Pursuant to a written plea agreement, defendant then entered a conditional plea of guilty to counts 1 and 3 of the indictment. On March 14, 2005, the district court accepted the plea, dismissed count 2, and sentenced defendant to 24 months' imprisonment and four years of supervised release. This appeal followed.

**II.**

On appeal from the denial of a motion to suppress, we review the district court's findings of fact for clear error and its conclusions of law *de novo*. *United States v. Smith*, 263 F.3d 571, 581 (6th Cir. 2001). A factual finding is only clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been made. *Id.* The evidence must be reviewed "'in the light most likely to support the district court's decision.'" *United States v. Braggs*, 23 F.3d 1047, 1049 (6th Cir. 1994) (citation omitted); *see also United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998) (en banc).

A basic tenet of Fourth Amendment law is that warrantless searches and seizures carried out inside private residences are presumptively unreasonable unless justified by one of the well-established exceptions to the warrant requirement. *Welsh v. Wisconsin*, 466 U.S. 740, 748-49 (1984); *Payton v. New York*, 445 U.S. 573, 586 (1980). The exigent circumstances exception has been recognized in situations of hot pursuit of a fleeing felon, imminent destruction of evidence, the need to prevent a suspect's escape, and risk of danger to the police and others. *United States v. Rohrig*, 98 F.3d 1506, 1515 (6th Cir. 1996). The police bear a "heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." *Welsh*, 466 U.S. at 749-50; *see also United States v. Morgan*, 743 F.2d 1158, 1162 (6th Cir. 1984).

"The exigent circumstances exception [to the warrant requirement] relies on the premise that the existence of an emergency situation, demanding urgent police action, may excuse the failure to procure a search warrant." *United States v. Radka*, 904 F.2d 357, 361 (6th Cir. 1990). To justify a warrantless entry based on exigent circumstances, there must also be probable cause to enter the residence. *United States v. Johnson*, 9 F.3d 506, 509 (6th Cir. 1993) (citing *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1511 n.6 (6th Cir. 1988)). Probable cause is defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). This determination must be made from the totality of the circumstances, based on the objective facts known to the officer at the time. *United States v. Ferguson*, 8 F.3d 385, 391-92 (6th Cir. 1993). In determining whether sufficient exigent circumstances exist to justify the warrantless entry and search or seizure, the court must "consider the totality of the circumstances and the 'inherent necessities of the situation at the time.'" *Rohrig*, 98 F.3d at 1511 (quoting *Johnson*, 9 F.3d at 508) (internal quotation marks omitted).

Further, the scope of the intrusion must be circumscribed by the exigencies that justified the warrantless search. *Mincey v. Arizona*, 437 U.S. 385, 392 (1978).

## A. Statement of Pertinent Facts[1]

Defendant Brown resided at 109 6th Street in Pikeville, Kentucky, which was located approximately 1/4 mile away from the Pikeville Police Department. An alarm system was installed by ABCO Security Systems in 1998. The system included an alarm on the exterior basement door, which consisted of a magnetic strip sensor at the top of the door and the top of the door casing. The exterior basement door alarm activated when the two magnetic strips were not completely flush with each other. The alarm was deactivated or was "restored" when the sensors became realigned. The door to the interior room in the basement had a recessed sensor that activated when the door was opened wider than 7/8 inch. There was also a motion detector in the basement.

On April 7, 2004, at approximately 2:08 p.m., ABCO Security was alerted that the exterior basement door alarm had been activated and restored three seconds later. The alarm at the house, however, would continue to loudly announce "basement door entry" for nine minutes after activation. ABCO called defendant's telephone number at the house twice, but got no answer. Then ABCO called the Pikeville Police Department to report that the basement door alarm had been activated. ABCO also called Ruth Dale Smith, defendant's neighbor and the person listed with ABCO as his first contact, and asked her to go out to meet the police.

The exterior basement door alarm activated a second time at approximately 2:10 p.m., and ABCO notified police dispatch accordingly. The alarm was restored approximately seven minutes later. Less than a minute later, at 2:18 p.m., the exterior basement door alarm activated a third time. It was restored after approximately two-and-one-half minutes, and was activated a fourth time less than a minute later. Smith, who went out to wait for the police, testified that she could hear the system loudly repeating "basement door."

Pikeville Police Officer Chris Edmonds was dispatched to defendant's residence to respond to the first alarm and was advised of the second alarm before he arrived. Edmonds had never been to defendant's residence before that date and did not know if defendant had previously experienced any problems with his security system.[2] Edmonds could hear the alarm announcing in a loud voice "basement door entry," and Smith advised him to check the basement door. Edmonds, following protocol for investigating burglar alarms, made a cursory check of the premises. He checked the front door first, which was locked, and then walked around to the back. Edmonds saw no car in the driveway, and did not find any broken or pried-open doors or windows.

When Edmonds approached the exterior basement door, however, he saw that it was ajar approximately 12 inches. Smith, defendant's neighbor, testified that she also saw that the basement door was "opened some." The district court found, "[b]ased on the testimony of Edmonds, corroborated by the testimony of Mrs. Smith, an impartial observer, [that] the outer basement door was opened approximately 12 inches, wide enough for Edmonds to fit his head inside." The district court added in a footnote that:

> Although Defendant alleges in his memoranda that the "basement door was not open
> but was breathing in and out due to the high winds" (Doc # 15 at 5), the Court has
> specifically found that the basement door was opened approximately twelve inches.
> While the effect of winds may be an explanation for the multiple activations and

---

[1] This statement of facts is based on the district court's written findings, which are largely undisputed.

[2] Nor was there testimony that defendant had in fact experienced problems with false alarms.

restorations of the outer basement door alarm, this plausible explanation has no effect on the Court's decision upholding the warrantless entry based on exigent circumstances.

Seeing the door ajar made Edmonds concerned for his safety and that of others. Thinking that a burglary might be in progress and with his weapon and flashlight in hand, Edmonds entered the basement to conduct a protective sweep and check for intruders. At 2:22 p.m., ABCO was alerted that the motion detector in the basement had been activated. Using his flashlight, Edmonds looked around and could see an interior door at the back of the basement.

Edmonds initially testified that this interior basement door was "partially cracked open about 6 inches," but later said he was not sure exactly how wide the opening was. He also said there was a wire latch that was hanging open. The district court found:

> Based on the testimony of ABCO President [Robin] Welch, and the records of alarm activity from that interior door (Defendant Exhibit 1), the Court finds that the interior door was opened just slightly, less than 7/8 inch—otherwise the ABCO records would show that interior door alarm activating prior to Edmonds opening the interior door during his protective sweep. The Court further finds that the interior basement door was not locked by any latch upon Edmonds' observation of it, and that door was not opened more than 7/8 inch until opened by Officer Edmonds.

In a footnote, the district court added that although defense counsel argued the interior door was locked with a wire hook and latch, no evidence was offered establishing that the door was locked.[3]

As Edmonds approached the interior door, he could smell what he believed to be marijuana and thought an intruder might be hiding or smoking marijuana behind that door. He testified that he quickly pushed the door open in an attempt to catch anyone inside off guard. No one was there, and the room had no other exit. Although the room was dark, Edmonds could see with the flashlight what appeared to be an indoor marijuana growing operation—complete with grow lights and approximately 176 marijuana plants. The entire sweep of the basement took approximately two minutes.[4]

---

[3] At the close of the hearing, defense counsel offered a photograph of the interior door closed with a wire latch. The prosecutor objected, expressing concern that it could cause confusion on appeal because no evidence had been offered to show that the door had been wired or latched shut. The district court agreed, noting that defendant could choose to testify about that latch—subject, of course, to cross-examination. In response, defense counsel represented that the photograph was only offered to show the door, not the latch, and agreed to supplement the record with a photograph of the door *without* the latch.

[4] Gary Huffman, a long-time friend of defendant's, testified that he had briefly been inside defendant's basement one or two days before the search, but had not noticed any odor of marijuana. The district court credited Huffman's testimony, but found that "because detection of the odor of marijuana does not add to or subtract from the permissible scope of the protective sweep, Huffman's testimony [was] of no practical consequence."

Edmonds summoned Pikeville Police Detective Bruce Anderson and showed him the marijuana in the basement. A short time later, defendant returned to the house and was placed under arrest. Edmonds secured the premises, while Anderson obtained a search warrant. We turn to the defendant's specific claims of error.

## B.          Initial Entry

Defendant argues first that it was clear error for the district court to have found that Edmonds discovered the exterior basement door open "approximately 12 inches." Defendant relies on the security report of the alarm activations at defendant's residence to argue that Edmonds likely triggered the fourth activation of the exterior door alarm because the motion detector inside the basement was activated only a few seconds later. The significance of this, defendant reasons, is that the alarm must have been "restored" (and therefore the door open less than 7/8 inch) just before Edmonds entered the basement.

Accepting this interpretation of the evidence, however, it is nonetheless entirely consistent with the district court's critical factual finding that the exterior basement door was found ajar. In fact, defendant even concedes on appeal that it may be legally immaterial whether the exterior door was open 12 inches or less than 7/8 inch. Moreover, even under defendant's reasoning, the security report does not contradict the testimony of Edmonds and Smith. That is, the report also indicates that the exterior door alarm was activated (and the door open more than 7/8 inch) when Edmonds arrived, and was restored (with the door open less than 7/8 inch) for only a minute between the third and fourth activations. As such, the basement door could have been discovered open by as much as 12 inches. Finally, even "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985).

Next, defendant contests the district court's finding that entry into his residence was justified by exigent circumstances. This and other circuits have held that an officer may lawfully enter a residence without a warrant under the exigent circumstances exception when the officer reasonably believes a burglary is in progress. *United States v. Estese*, 479 F.2d 1273, 1274 (6th Cir. 1973) (holding warrantless search of residence was justified because there was probable cause to believe burglary was in progress); *see also Johnson*, 9 F.3d at 509 (noting that several other circuits "have upheld warrantless searches conducted during burglary investigations under the rubric of exigent circumstances") (citing cases). When probable cause exists to believe a burglary is in progress, officers are presented with exigent circumstances justifying their warrantless entry into the residence "because '[i]t would defy reason to suppose  that [the officers] had to secure a warrant before investigating, leaving the putative burglars free to complete their crime unmolested.'" *Johnson*, 9 F.3d at 510 (quoting *United States v. Singer*, 687 F.2d 1135, 1144 (8th Cir. 1982) (alterations in original), *adopted in relevant part*, 710 F.2d 431 (8th Cir. 1983) (en banc)).

Pointing to the specific circumstances in *Estese* and *Johnson*, defendant argues that the district court erred in finding there was probable cause in this case because Edmonds did not find evidence of a *forced* entry (such as pry marks or a broken window). It is true that, in *Estese*, the officer responded to a call reporting a breaking and entering and found pry marks on an open door. It is not surprising that this was found sufficient to establish probable cause to believe a burglary was in progress. As is evident from the discussion of exigent circumstances in *Johnson*, however, it is the totality of the circumstances and not the presence of pry marks or a broken window that is determinative.[5]

---

[5]In *Johnson*, officers responded to a call from a neighbor who reported seeing someone crawl through the window of a house. The officers found the doors locked, got no answer when they knocked on the door, and then discovered a broken window through which they could see two people inside. When called to the window, the woman

In this case, Edmonds responded to a burglar alarm that he knew had been triggered twice in a relatively short period of time and arrived within just a few minutes of the first activation. He was not met by a resident of the house, but by the neighbor who directed him to the basement door. The sounding alarm, the lack of response from the house, and the absence of a car in the driveway, made it less likely that this was an accidental activation. Investigating, Edmonds found the front door secured but the basement door in the back standing ajar. While Edmonds did not find a broken window or pry marks on the open door, it was objectively reasonable for him to believe that this was not a false alarm but, rather, that the system had recently been triggered by unauthorized entry through the open basement door. These circumstances, including the recently activated basement door alarm and evidence of a possible home invasion through that same door, establish probable cause to believe a burglary was in progress and justified the warrantless entry into the basement. *See*, *e.g.*, *Singer*, 687 F.2d at 1144, (upholding warrantless entry where officer responded to find strangers with a pickup truck backed up to the house); *Reardon v. Wroan*, 811 F.2d 1025, 1030 (7th Cir. 1987) (finding exigent circumstances where police received call reporting burglary at a fraternity house when students were typically away, and found a single car in the driveway and the door unlocked); *but see United States v. McClain*, 444 F.3d 556, 562-64 (6th Cir. 2005) (finding no probable cause where neighbor reported lights on in house that owners had moved out of and police found the front door slightly ajar but nothing amiss); *United States v. Selberg*, 630 F.2d 1292, 1293-96 (8th Cir. 1980) (warrantless entry not justified where neighbors saw homeowner leave front door open and there were no signs of burglary or suspicious activity).

Other courts have upheld similar warrantless searches of private residences by officers responding to an activated burglar alarm. For example, in *United States v. Tibolt*, 72 F.3d 965, 969-71 (1st Cir. 1995), police were called by a security company to investigate an activated burglar alarm. The officers entered the wrong driveway and mistakenly believed defendant's residence was the source of the alarm. Finding no signs of forced entry, police discovered an unlocked door on the rear deck and mistakenly believed it was the source of the alarm. When no one responded from inside the residence, police entered, conducted a protective sweep, and discovered an indoor marijuana growing operation. The court found the officer had probable cause to believe a breaking and entering had been or was being committed, and this established exigent circumstances. The court emphasized that without entering the residence, the officers could not know whether "an intruder had managed to get into the residence, and even injured or captured a resident, then fled; or had been caught off guard by the police and remained in the residence with a forcibly detained resident." *Id*. at 970.

Even more factually similar is *United States v. Dighera*, 2 F. Supp. 2d 1377, 1380 (D. Kan. 1998). There, police were dispatched to defendant's residence when the security company notified the police that the alarm had been activated. The officers found the front door open, but no other signs of a break-in were apparent. Police got no response from inside the house and entered the house through the open door to investigate a possible burglary. In the sweep of the residence looking for people, officers discovered drug paraphernalia in plain view. The court concluded that the officers acted reasonably in entering the residence and searching for possible intruders or injured or incapacitated residents. *See also United States v. Porter*, 288 F. Supp. 2d 716, 721-22 (W.D. Va. 2003) (finding activation of alarm, no response to officer's knocking, and an unlocked rear door presented exigencies justifying warrantless entry into residence).

Finally, although defendant would have us disregard the burglar alarm because a high percentage of activations are false alarms, a recently activated burglar alarm is particularly pertinent

---

told police that she lived there but she did not have identification or a key to unlock the window. She also said that no one else was inside the house, which the officers discovered was not true. We affirmed the district court's finding that, under the circumstances, the officers had a reasonable basis for believing a burglary was in progress and that a protective sweep of the house was warranted to look for other individuals and secure the owner's property. 9 F.3d at 510.

to the probable cause determination. As the district court so aptly noted: "The purpose of a security alarm is to alert police to problems so they can quickly respond to the premises." To be sure, a homeowner who installs a security system should certainly anticipate—and probably expects—that the police will respond to an alarm and investigate its cause. We agree with the court in *Porter* that

> the activation of an alarm in conjunction with additional information supporting the possibility of a break-in is sufficient to support police officers' determination that an exigency exists. The very purpose for a home security alarm is to signal that something may be amiss. . . . While this court by no means suggests that the police have license to enter a private residence every time an alarm is activated, they do have a duty to investigate, and, when the facts and circumstances suggest reasonable suspicion that an exigency exists, to enter the home.

288 F. Supp. 2d at 721-22. Because it would be reasonable for an officer in Edmonds's shoes to believe a burglary was in progress, exigent circumstances existed that justified the warrantless entry.

### C.    Scope of Intrusion

Defendant asserts on appeal that even if Edmonds's initial entry was lawful, the search of the interior room in the basement exceeded the scope of the search that was justified by the exigent circumstances. *Mincey v. Arizona*, 437 U.S. 385, 392-93 (1978); *Arizona v. Hicks*, 480 U.S. 321, 324-25 (1987). We have held that a cursory check of the premises, analogous to a protective sweep incident to arrest, is valid if it is "narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Johnson*, 9 F.3d at 510 (internal quotation marks and citations omitted).

First, defendant argues that the search of the interior room was not lawful because it exceeded the "period of the exigency." Specifically, defendant seems to argue that the exigent circumstances no longer existed because Edmonds did not see or hear anyone in the main area of the basement. On the contrary, the exigent circumstances justified the brief and cursory inspection of the premises, including the interior room in the basement where an intruder could be hiding or a resident restrained. No intruder was found, but the evidence of an indoor marijuana growing operation was sitting in plain view. This is not like *Hicks*, where exigent circumstances justified the warrantless search of the apartment for a shooter, victims, and weapons, but the police exceeded the scope of the search by moving stereo equipment to find the concealed serial numbers. Nor is this like the four-day warrantless search in *Mincey* that proceeded after the exigent circumstances no longer existed. Here, Edmonds conducted a limited sweep of the basement that lasted a total of no more than two minutes. The district court did not err in finding that Edmonds's search of the interior room did not exceed the scope of the exigent circumstances.

Finally, defendant argues, as he did in the district court, that because the interior basement door was closed with a wire latch, a burglar could not have been hiding inside and therefore Edmonds exceeded the scope of the exigency by opening that door. As noted earlier, however, the record demonstrates that this argument was made at the suppression hearing, but no evidence was offered to show that the door was closed or latched. Apparently recognizing this, defendant's appeal in this regard is from the denial of his motion for reconsideration and to reopen the evidentiary hearing to present evidence that the interior basement door had a latch that was used to keep it completely closed. Our review of that decision is for abuse of discretion. *United States v. Lawrence*, 308 F.3d 623, 627 (6th Cir. 2002). Because defendant has not specified what evidence or testimony he wanted to offer in support of the motion for reconsideration, or demonstrated that the unspecified evidence was somehow "newly discovered" or could have affected the outcome of the suppression motion, we find that the district court did not abuse its discretion in denying the motion to reopen the evidentiary hearing.

**AFFIRMED**.