NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0750n.06
Filed: October 19, 2007

Nos. 06-6050 and 06-6051

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| HAROLD EUGENE WILSON, | ) | EASTERN DISTRICT OF TENNESSEE, |
| | ) | KNOXVILLE DIVISION |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before: CLAY and GIBBONS, Circuit Judges, and HOOD, Chief District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge**. This appeal arises out of the arrest of

defendant-appellant Harold Eugene Wilson for possession of crack cocaine with intent to distribute.

The district court denied Wilson's pretrial motion to suppress the evidence against him, and a jury

later convicted Wilson of one count of possession with intent to distribute crack cocaine in violation

of 21 U.S.C. § 841(a). In addition to sentencing Wilson to 120 months imprisonment on the

possession count, the district court determined that Wilson had violated the terms of his probation,

imposed in a previous case, and sentenced Wilson to an additional term of thirty-seven months. For

the reasons below, we affirm the judgment of the district court .

---

[*]The Honorable Joseph M. Hood, Senior United States District Judge for the Eastern District
of Kentucky, sitting by designation.

I.

The underlying facts, as set forth at Wilson's suppression hearing, are as follows. On July 27, 2004, Robert Nease, a narcotics agent employed with the Fifth Judicial Drug Task Force in Blount County, arranged an undercover drug purchase from Robert Andre Smith through Jason Newton, a confidential informant. Nease, accompanied by a fellow agent, Marty Widener, followed Newton to a Pilot gas station. Upon arriving at the station, the agents observed, among other things, Smith's vehicle, a red pickup truck, parked beside Wilson's gray Buick. As the officers watched, Smith walked between the two vehicles, which were both parked, front-first, on the side of the Pilot station and approximately three or four feet away from each other. Although Smith was not speaking to Wilson at the time the officers arrived, Nease testified that Smith was standing close enough and in a position from which he could have engaged Wilson in conversation. Nease exited his car and went between Smith and Wilson's vehicles, where he observed Smith's wife seated in the driver's seat of Smith's truck and Wilson seated in the driver's seat of his car. As Nease approached, Smith, who was standing between the truck and the Buick, greeted Nease by name, calling out "Hey, Officer Nease." According to Nease's testimony, after Smith acknowledged him, Wilson reacted: "As I approached him, I noticed Mr. Wilson . . . turn. He's at the steering wheel, he turns and appears to be hiding something or stuffing something, which, in police work, we call a furtive movement." During cross-examination, Nease claimed that he saw Wilson's left arm "appear to be putting something away or hiding something." Nease, en route to place Smith under arrest, told Wilson to place his hands

where they could be seen and alerted Widener that Wilson was "stuffing something." Nease had no further dealings with Wilson at that time.

Widener, at Nease's urging, approached Wilson's car. He recognized Wilson from an earlier narcotics investigation involving Wilson. Widener asked Wilson to step out of his vehicle, and Wilson complied. Upon Wilson's exit, Widener conducted "a light pat-down of [Wilson's] pockets" to make sure that Wilson had no weapons. Widener found no weapons but testified at Wilson's suppression hearing that he observed, protruding from the center console of Wilson's vehicle, the top of a cellophane baggy. Following his pat down of Wilson, Widener "immediately" went into the vehicle console "to retrieve what [he] believe[d] to be narcotics." Widener testified that he concluded that the baggy contained narcotics based upon his "experience, training and everything" and explained that the baggy's appearance was "consistent with the packaging of narcotics and, as a cellophane baggy, had a knot in the top." Widener further represented that he knew Smith to be a user and Wilson to be a seller of illegal narcotics. Finally, Widener claimed that based on Nease's warning concerning Wilson's movement, he was afraid there might be a weapon in Wilson's car. In Wilson's center console, Widener discovered what was later determined to be 17.7 grams of cocaine base. Wilson was placed under arrest, and, during the course of a more thorough subsequent search incident to arrest, the officers discovered a Copenhagen snuff can containing a smaller amount of powder cocaine.

Widener testified that following Wilson's arrest but before the officers engaged him in any "in-depth conversation," the officers advised Wilson of his rights verbally. Wilson did not "say either way" whether he wished to waive his rights, but Widener assured Wilson that he

could "pick and choose" the questions he wanted to answer, and a conversation commenced. Wilson explained to the officers that he was "in a bind" because he was on probation and any arrest would prompt the revocation of his probation. He then offered to secure two kilos of cocaine for the officers if they helped him avoid prison. The officers placed Wilson in custody.

Wilson was subsequently charged with one count of possession with intent to distribute more than five grams of crack cocaine in violation of 21 U.S.C. § 841(a). Wilson filed a motion to suppress the evidence against him on the ground that Widener's search of his vehicle was not supported by reasonable suspicion and was therefore in violation of his Fourth Amendment rights. On February 8, 2006, a United States Magistrate Judge held a hearing on Wilson's motion. Following the hearing, Wilson filed a supplemental motion seeking to suppress his statements following his arrest on the ground that Widener neglected to provide him with a full recitation of his *Miranda* rights.

The magistrate judge issued a written order recommending the denial of Wilson's motion. In the order, the magistrate judge ruled that the agents had reasonable suspicion of wrongful activity on Wilson's part and lawfully conducted a pat down of Wilson's person consistent with *Terry v. Ohio*, 392 U.S. 1 (1968). Wilson's claim concerning the search of his vehicle was similarly rejected on the ground that the officers were justified in conducting a protective search of Wilson's vehicle following his *Terry* stop. Finally, the magistrate judge concluded that Wilson's claim that the police failed to advise him fully of his *Miranda* rights was without merit, crediting Widener's testimony that he fully articulated Wilson's rights to him before engaging him in questioning. The district court overruled Wilson's objections to the magistrate judge's

4

report and recommendation and adopted the magistrate's report in its entirety. Following a two-day trial, a jury found Wilson guilty of the charge against him. Wilson's motions for a judgment of acquittal were denied.

At the time of his conviction in this matter, Wilson was serving a five-year term of probation for a 2003 conviction from the United States District Court for the Western District of Texas for conspiracy to possess with intent to distribute cocaine. Upon Wilson's conviction in the Eastern District of Tennessee, the government filed a petition seeking to have Wilson's probation revoked and a sentence of imprisonment imposed for his 2003 conviction.

At sentencing, the district court sentenced Wilson to the statutory mandatory minimum of 120 months imprisonment and an eight-year term of supervised release for his possession with intent to distribute conviction.[1] In addition, the court revoked Wilson's probation for his 2003 conviction and sentenced him to thirty-seven months imprisonment and four years supervised release for that earlier offense. Wilson filed timely notices of appeal from the judgment of the district court, including the revocation of his probation.

## II.

## A.

An appellate court reviewing a district court's denial of a motion to suppress conducts a *de novo* review of the district court's legal conclusions and examines any factual findings for clear error. *United States v. Dillard*, 438 F.3d 675, 680 (6th Cir. 2006).

---

[1]The government had previously filed notice of its intention to seek an enhanced penalty based upon Wilson's previous drug conviction, as required under 21 U.S.C. § 851.

Wilson argues on appeal that the agents had insufficient cause to justify the inspection of his vehicle following the *Terry* pat down conducted by Widener and that the district court should have suppressed the evidence secured as a result of the agent's unlawful activities.

The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches at the hands of the government, U.S. Const. amend. IV, and, as a result, any governmental invasion of those areas ordinarily protected by the scope of the Fourth Amendment must be reasonable. *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977) ("The touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'"). In *Terry v. Ohio*, the court deemed reasonable the use of brief investigatory pat downs to ensure the absence of dangerous weapons on individuals suspected of criminal activity. 392 U.S. 1, 30-31 (1968). An officer may engage in such a stop and inspection in the absence of probable cause so long as the officer has "reasonable suspicion to believe that criminal activity may be afoot." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation marks omitted). That is, he must be able to point to "specific and articulable facts which, taken together with rational inferences from those facts," warrant the intrusion occasioned on the individual's person. *Terry*, 392 U.S. at 21. When assessing whether a police officer had reasonable suspicion, a reviewing court must look at the totality of the circumstances surrounding a given search. *Arvizu*, 534 U.S. at 273; *United States v. Jacob*, 377 F.3d 573, 577 (6th Cir. 2004). Wilson does not directly challenge Widener's right to conduct a *Terry* pat down but argues on appeal that Widener lacked the necessary cause to inspect the interior of his vehicle.

6

In *Michigan v. Long*, 463 U.S. 1032 (1983), the Supreme Court extended its holding in *Terry* to permit the inspection of a vehicle occupied by a person who has been lawfully detained for a *Terry* stop. The Court ruled:

> [T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from these facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

*Long*, 463 U.S. at 1049. Wilson argues that because Widener's pat down did not reveal the presence of weapons, the officer was not empowered to conduct a further search of Wilson's car. In other words, under Wilson's view, an officer undertaking a search of a vehicle's interior pursuant to a *Terry* stop must possess an additional measure of reasonable suspicion before proceeding to inspect the car. *Long* forecloses this argument, however. Under the reasoning of the Court's holding in *Long*, when a police officer compels the exit of an individual from a vehicle in order to conduct a *Terry* frisk—based upon his belief that the individual is potentially dangerous—that officer remains vulnerable to the possibility that the individual, if not arrested, will be free to retrieve any weapons within his car. *See id.* at 1051-52. Under *Long*, the vehicle's inspection is intended to ensure that an individual subject to a preliminary determination by the police that he may be armed and dangerous does not return to his vehicle and obtain a weapon to harm either the officer or others in the vicinity. Because the search of a vehicle subsequent to a *Terry* stop is based upon this initial determination, there is no need for a further finding of dangerousness to support the inspection.

7

Thus, Widener's search of Wilson's car following a *Terry* pat down was reasonable. The totality of the circumstances supported the agents' belief that Wilson might be armed and dangerous and justified Widener's decision to pat Wilson down for weapons, a proposition that Wilson does not challenge. After performing a lawful *Terry* frisk, Widener was empowered under *Long* to check the interior of Wilson's vehicle for weapons. The underlying policy of protecting police officers that animates the *Long* decision applies equally here. Had the officers elected to release Wilson and allowed him access to his vehicle without checking the interior for weapons, Wilson would have been in a position to secure a weapon secreted in his vehicle. This was a particularly serious concern on these facts where the agents did not immediately part ways with Wilson and remained at the gas station, on foot, to arrest Smith.

Upon discovering narcotics in the console of Wilson's vehicle during the course of a permissible vehicle inspection under *Long*, Widener was free to seize that material. "If, while conducting a legitimate *Terry* search of the interior of the automobile, the officer should, as here, discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances." *Long*, 453 U.S. at 1050.

### B.

Wilson argues that the officers placing him under arrest failed to inform him fully of his Fifth Amendment rights as required by *Miranda v. Arizona*, 384 U.S. 436, 471-72 (1966), and the district court should have suppressed his statements following his arrest. In its order recommending the denial of Wilson's motion to suppress, the magistrate judge accepted Agent

Widener's account of the events surrounding Wilson's arrest and rejected Wilson's claim that Agent Widener informed Wilson only of his right to "pick and choose" the questions he wished to answer. This conclusion, embraced by the district court, is a factual determination that is reversible upon a showing that it is clearly erroneous. *United States v. Johnson*, 488 F.3d 690, 695 (6th Cir. 2007). A district court clearly errs when its decision leaves "the reviewing court . . . with the definite and firm conviction that a mistake has been made." *United States v. Brown*, 449 F.3d 741, 744 (6th Cir. 2006). "The evidence must be reviewed in the light most likely to support the district court's decision." *Id.* (internal quotation marks omitted).

Wilson reads Widener's testimony to be an admission that the only information he provided Wilson was that he had the right to choose among the questions posed to him. This is a strained reading of Widener's testimony, which actually suggests that Widener's advice to Wilson followed his recitation of the *Miranda* warnings. In any event, to the extent that Widener's testimony is ambiguous, the district court's selection of one reasonable interpretation is not erroneous. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."). In light of Widener's uncontested testimony concerning the events surrounding Wilson's arrest, it was not clear error for the district court to conclude that Widener fully informed Wilson of his *Miranda* rights.

## C.

Wilson argues that the government failed at trial to present sufficient evidence of his commission of the crime with which he was charged. An individual advancing a sufficiency of

9

the evidence claim following his conviction "bears a very heavy burden." *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006) (internal quotation marks and citation omitted). An appellate court considering such a claim must evaluate "the evidence in the light most favorable to the prosecution and give[] the prosecution the benefit of all reasonable inferences from the testimony." *Id.* (citation omitted). Using this deferential lens, a reviewing court may not reverse if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citation omitted).

Wilson's sufficiency of the evidence claim is essentially a challenge to the credibility of the witnesses offered by the government. He contends that Smith, Nease, and Widener were unreliable witnesses whose testimony could not form the basis for his conviction. Smith, by his own admission, had a number of prior convictions for a range of offenses, including shoplifting, securing prescription medication by fraud, forgery, and possession of illegal drugs. Moreover, he acknowledged serving as a paid informant in other investigations coordinated by the Fifth Judicial Task Force. As to the testimony of the law enforcement officers, Wilson argues that the initial arrest report prepared by Widener was not consistent with his testimony at the suppression hearing. Specifically, the report stated that "agents observed a large cellophane baggie containing crack cocaine inside the center console of Wilson's vehicle." At the suppression hearing, however, Widener clarified that, when he initially observed the cellophane baggy, he was unable to ascertain what the bag contained. When asked to explain this inconsistency, counsel for the government represented that after bringing Nease and Widener together, he utilized their "collective memories" to determine precisely what happened.

10

Wilson contends that the government's witnesses were sufficiently incredible to make his conviction unreliable. Because an appeals court must resolve any credibility determinations in favor of the jury's verdict, *United States v. Paulette*, 457 F.3d 601, 606 (6th Cir. 2006), Wilson cannot prevail on his claim. In fact, our court has explained that credibility issues are not proper grounds for sufficiency of the evidence challenges. *United States v. Burns*, 298 F.3d 523, 535 (6th Cir. 2002) (noting that sufficiency of the evidence challenges "are no place for arguments regarding a government witness's lack of credibility") (internal quotation marks and alterations omitted). All of the government's witnesses were subject to cross examination by defense counsel at trial, and it is not the role of an appellate court to "judge the credibility of witnesses or substitute [its] judgment for that of the jury." *United States v. King*, 272 F.3d 366, 370 (6th Cir. 2001). Because Wilson merely challenges the veracity of the government witnesses' accounts, his claim is not a cognizable sufficiency of the evidence challenge and lacks merit.

D.

A district court's decision to revoke a term of probation is reviewed for an abuse of discretion. *United States v. Bujak*, 347 F.3d 607, 609 (6th Cir. 2003). Wilson contends that, in the event that the panel accepts his Fourth Amendment claim and his claim concerning the sufficiency of the evidence, the district court's revocation of his probation in his earlier case may not stand. Wilson's argument on this issue fails because it is premised entirely upon his Fourth Amendment and sufficiency of the evidence claims, which we have rejected.

III.

For the foregoing reasons, we affirm the judgment of the district court.

11