NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0350n.06

No. 16-6263

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 20, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| RONNIE FRISKEY, | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

**BEFORE: BOGGS, GRIFFIN, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** A jury convicted defendant-appellant Ronnie Friskey of one count of manufacturing 100 or more plants of marijuana, 21 U.S.C. § 841(a)(1), and acquitted him of one count of possessing a firearm during and in relation to a drug-trafficking crime, 18 U.S.C. § 924(c)(1). Friskey appeals, arguing that: (1) the district court erred in denying Friskey's motion to suppress all evidence seized from his basement; (2) the district court erred in applying two two-level sentencing enhancements, for possession of a firearm and for obstruction of justice; and (3) Friskey's above-Guidelines sentence is procedurally and substantively unreasonable. We affirm.

## I. Background

On November 13, 2012, police officers were dispatched to Mills Road in Kenton County, Kentucky, following a 911 call reporting that a suspicious person was prowling outside of a residence there; the caller did not report a specific address. There had previously been a number of burglaries in the area. The officers initially went to the wrong house, where they checked the

perimeter of the residence, discovered that a door was unlocked, and entered to look for burglars.

After the officers exited this house, the 911 caller approached the officers and informed them that they had entered the wrong house. The caller directed the officers to 3277 Mills Road, Friskey's address, and told them that there had been a male prowling outside the house and a suspicious vehicle parked across the street.

At Friskey's house, the officers discovered that both the front and back doors were unlocked. The officers also noticed low-to-the-ground windows and believed it likely that the house had a basement. The officers entered the house through the front door to search for the suspected burglar. They immediately noticed a strong marijuana odor in the house. The officers were unable to locate anyone in their sweep of the first floor of the house. Eventually, they discovered a trap door hidden underneath a carpet in a first-floor alcove that the officers described as seeming "like a hallway that led to nowhere[.]" R. 85, PID 408. The officers opened the trap door and were met by an even stronger marijuana odor. The officers then searched the basement for the suspected burglar. Although they did not locate anyone in the basement, they discovered a wall of plastic sheeting and a large number of marijuana plants in plain view. The officers searched the first floor again and still did not locate a burglar. The officers then exited the house, secured the perimeter, and sought a search warrant based on the marijuana plants observed.

About two hours later, after obtaining a search warrant, officers reentered the house.[1] While executing the search warrant, the officers found the suspected burglar hiding behind a

---

[1] In the time between the initial search and the issuance of the warrant, an additional police officer arrived at the house to investigate a device with hoses sticking out of it that the officers discovered in their search of the first floor of the house. The officers suspected the device may have been used for the production of methamphetamine. The additional officer

dresser on the first floor; the suspect told the officers that he had previously been hiding under a pile of clothes in a closet, and relocated to the dresser after realizing the officers had not yet left the premises. The officers seized 571 marijuana plants in various stages of growth, grow lights, a filter system and other materials used to grow marijuana, an AK-47 assault rifle, a .22-caliber rifle, several magazines and ammunition, and $8,015 in cash.

Friskey moved to suppress the evidence seized from his home as the fruit of an unconstitutional search; the district court denied the motion and admitted the evidence. Prior to trial, Friskey stipulated that he knowingly and intentionally grew marijuana in the basement of his residence, and that he knowingly possessed the two firearms. Thus, the only issues for trial were (1) the number of marijuana plants in the basement and (2) whether the firearms were possessed in furtherance of the marijuana manufacturing. Regarding the first question, Friskey testified that there were only 75 marijuana plants. The jury convicted Friskey of manufacturing 100 or more marijuana plants, and acquitted him of the firearms charge.

Friskey's presentence report ("PSR") calculated Friskey's offense level as 24 and his criminal history category as III, yielding a Sentencing Guidelines' range of 63 to 78 months. Friskey's offense level included a two-level enhancement for possessing a firearm, and another two-level enhancement for obstruction of justice due to Friskey's false testimony during his trial. Friskey objected to both enhancements. The district court adopted the PSR, including the enhancements, and then varied Friskey's sentence upward to 90-months' imprisonment.[2] The district court justified its variance on the grounds that 571 plants were discovered in Friskey's

---

entered the house, quickly investigated the device, and determined that it was unrelated to methamphetamine production. The officer then exited the house. This search is unrelated to the issues on appeal.

[2] The Government had requested a 121-month sentence, and Friskey requested a sentence in the "lower half of" his sentencing range.

basement and "[t]he fact that a hundred plants gets you [a statutory minimum of] 60 months,[3] 571, by statute, gets you 60 months, [any number between 100 and 1,000 plants] gets you 60 months . . . leads the Court to conclude that somewhat of a variance is necessary in this case upward." R. 190, PID 1867–68. The court also emphasized that Friskey admitted that he had used marijuana manufacture as his livelihood for approximately eighteen months; he fled the area after learning of the search of his residence; and he was apprehended months later because he attempted to sell marijuana to a police informant and is therefore more appropriately considered as a two-time offender.

On appeal, Friskey argues that the district court erred in admitting the evidence seized during the search, that the sentencing enhancements for possession of a firearm and obstruction of justice were improper, and that his sentence is procedurally and substantively unreasonable.

## II. Analysis

### A. Suppression of the Seized Evidence

When analyzing a district court's denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Quinney*, 583 F.3d 891, 893 (6th Cir. 2009). Friskey makes multiple arguments regarding the constitutionality of the officers' warrantless search, including that (1) there were no exigent circumstances justifying the officers' entry into Friskey's house; (2) the officers were not permitted to engage in a protective sweep of the house; (3) even if the officers were permitted to sweep the house, they exceeded the permissible scope of the sweep by entering the basement; and (4) the officers' initial smell of marijuana was insufficient on its own to establish probable cause supporting the search.

---

[3] The statutory minimum sentence for the marijuana conviction is 60 months. 21 U.S.C. § 841(b)(1)(B).

First, we conclude that Friskey at least forfeited the argument that the officers' initial entry into his house was unconstitutional, and we therefore review for plain error.[4] *See United States v. Mack*, 729 F.3d 594, 607 (6th Cir. 2013). Given the 911 call and the officers' interaction with the 911 caller, we cannot say that the district court plainly erred in concluding that the officers had probable cause to believe there was a burglary in progress inside Friskey's house. When officers possess probable cause to suspect that there is a burglary in progress, they "are also confronted with the necessary exigency" to enter a home without a warrant. *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005). Since the officers' initial entry into the

---

[4] When the district court attempted to narrow the issue during the suppression hearing, Friskey's counsel failed to assert that there were no exigent circumstances to justify the officers' warrantless entry into his home:

> [The Court:] You're not contesting the initial entry into the residence, are you, based on exigent circumstances, or are you?
>
> [Friskey's Counsel:] Your Honor, unless I learn something today, no. I mean, it appears to me, and I've talked to Mr. Friskey about this in general, that the officers were legitimately called to the scene. It's what happened after they got there that we have issue with.
>
> The Court: That's fine. As far as the initial entry into the residence, because what I try to do is see what actually is in dispute and then focus on those issues.
>
> [Friskey's Counsel:] Your Honor, I don't have a dispute with that. Had I had a dispute with that, it would have been incumbent on me to subpoena the reporting person and put them on the witness stand and have them say something other than what the police reported. We have no reason to believe that the phone call didn't happen or that the police got there incorrectly.
>
> The Court: So we're focused on just kind of factually what occurred after they went in the house, when the burglar was found, when the plants were observed.

R. 85, PID 378. The colloquy between the district court and Friskey's counsel is somewhat ambiguous. On the one hand, the district court could have understood Friskey's counsel as agreeing that exigent circumstances justified the initial entry. On the other hand, counsel's extended answers explicitly concede only that the officers were at Friskey's house for the reason they said—that they received a 911 call, and that the caller identified Friskey's house as the site of a potential burglary-in-progress. Because Friskey is entitled to no more than plain-error review, and he has not shown that the district court plainly erred, we need not decide whether the argument was forfeited or waived.

home was permissible, Friskey's argument that the officers were not permitted to conduct a protective search of the home fails. *See United States v. Johnson*, 9 F.3d 506, 510 (6th Cir. 1993) (police officers' search of a residence was justified because "it would defy reason to suppose that [the officers] had to secure a warrant before investigating, leaving the putative burglars free to complete their crime unmolested") (citation omitted).

We further conclude that the officers' entry into the basement to check for the suspected burglar was permissible. This court has held that "a cursory check of the premises, analogous to a protective sweep incident to arrest, is valid if it is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *United States v. Brown*, 449 F.3d 741, 750 (6th Cir. 2006) (quoting *Johnson*, 9 F.3d at 510). Here, the officers had observed close-to-ground windows, indicating that there was a basement, and were concerned that they had not immediately located a basement door. They encountered an alcove that looked noticeably altered and had a double-layered carpet on the floor, which, when pulled back, revealed a trap door. The officers did not search spaces in which a person would clearly not be hiding, such as drawers or cabinets; they simply looked in a place—the basement—where a burglar could have been hiding. *See id.* (distinguishing the search of an interior basement room from "moving stereo equipment to find the concealed serial numbers"). Once the officers discovered the trap door, they acted reasonably in quickly checking the basement for the suspected burglar, and, after failing to locate him, but having seen evidence of a significant marijuana-growing operation, exiting the house to await the issuance of a search warrant.

Because we find that the scope of the officers' search was reasonable, we need not consider whether smelling marijuana, standing alone, would supply probable cause to justify the search warrant.[5]

## B. Firearms Enhancement

Friskey next argues that the district court erred in applying a two-level sentencing enhancement pursuant to Guidelines § 2D1.1(b)(1) for his possession of the .22-caliber rifle. A district court's determination that a defendant possessed a firearm during a drug crime is reviewed for clear error. *United States v. Darwich*, 337 F.3d 645, 664 (6th Cir. 2003).

In order to obtain a sentencing enhancement under Guidelines § 2D1.1(b)(1), the Government must establish that Friskey possessed a firearm in connection with his manufacture of marijuana. *United States v. Faison*, 339 F.3d 518, 519 (6th Cir. 2003). "If the government establishes that the defendant possessed a weapon, a presumption arises that the weapon was connected to the offense." *United States v. Wheaton*, 517 F.3d 350, 367 (6th Cir. 2008) (internal quotation marks omitted). To rebut the presumption, Friskey must present evidence, and not "mere argument," that it was "clearly improbable" that the firearm was connected to the crime. *United States v. Greeno*, 679 F.3d 510, 514 (6th Cir. 2012). The following factors guide our review of the enhancement: "(1) the type of firearm involved; (2) the accessibility of the weapon to the defendant; (3) the presence of ammunition; (4) the proximity of the weapon to illicit drugs, proceeds, or paraphernalia; (5) the defendant's evidence concerning the use of the weapon; and

---

[5] The Government asserts that even if the officers' search of Friskey's basement was unreasonable, the officers' smelling marijuana upon entering the house provided an independent basis for the issuance of the search warrant. Since we find the officers' search of the basement to have been reasonable, we need not consider whether the marijuana smell would have been sufficient to obtain the search warrant.

(6) whether the defendant was actually engaged in drug-trafficking rather than mere manufacturing or possession." *Id*. at 515.

The district court did not err in finding that the Government proved by a preponderance of the evidence that Friskey possessed a firearm. It is undisputed that Friskey knowingly possessed the rifle, and Friskey concedes that the "loaded .22 rifle was found in the bedroom with the bulk of the currency[.]"[6] Appellant Br. at 45.

Friskey has not shown that it was clearly improbable that the rifle was connected to the crime. Friskey's contention that the firearm was not "readily accessible" to him lacks merit; the firearm was owned by Friskey and found loaded in a room off his bedroom, in close proximity to most of the proceeds from Friskey's marijuana manufacturing. The rifle was clearly available to Friskey whenever he wanted it. Friskey further argues that "the Government itself recognized the lack of evidence to prove that [he] possessed the .22-caliber firearm in furtherance of drug trafficking" because it struck the .22 rifle from the indictment and only sought a conviction under 18 U.S.C. § 924(c)(1) for Friskey's possession of the AK-47. Appellant Br. at 45–46. First, this is "mere argument," and not actual evidence that the possession of the rifle was unrelated to marijuana manufacturing. *Greeno*, 679 F.3d at 514. Second, the Government has a far lighter burden of proof during sentencing than it does at trial, and its decision to remove the .22-caliber rifle from the indictment is therefore irrelevant in evaluating the district court's application of a § 2D1.1(b)(1) enhancement. *See United States v. Miggins*, 302 F.3d 384, 391 (6th Cir. 2002) ("[T]he jury's verdict of acquittal on the 18 U.S.C. § 924(c)(1) firearm possession charge does not prevent the sentencing court from considering conduct underlying the charge of which

---

[6] From the evidence, it appears that the .22-caliber rifle was found leaning against Friskey's dryer in a small office attached to the bedroom rather than "in the bedroom." The distinction is immaterial.

Miggins was acquitted, so long as that conduct has been proved by a preponderance of the evidence.").

Because Friskey has failed to show it was clearly improbable that the .22-caliber rifle was connected to his manufacture of marijuana, the district court did not clearly err in applying the § 2D1.1(b)(1) enhancement. *See Greeno*, 679 F.3d at 515 (affirming a § 2D1.1(b)(1) enhancement where firearms "were found throughout [Defendant's] property in relatively close proximity to drugs and drug paraphernalia" and "regardless of where [Defendant] was on the property, he had ready access to the firearms"); *see also Wheaton*, 517 F.3d at 367 (affirming a § 2D1.1(b)(1) enhancement when defendant had "dominion over the house where the gun was found").

## C. Obstruction-of-Justice Enhancement

When reviewing a district court's application of an obstruction-of-justice enhancement pursuant to § 3C1.1 of the Guidelines, we review the district court's factual findings for clear error and its determination that its factual findings constitute an obstruction of justice de novo. *United States v. Bazazpour*, 690 F.3d 796, 805 (6th Cir. 2012). Here, the district court applied the enhancement after concluding that Friskey perjured himself by testifying during trial that there were only 75 marijuana plants in his basement.

This court has recognized the importance of a criminal defendant's constitutional right to testify, and observed that "the application notes to the Guidelines themselves provide that § 3C1.1 is 'not intended to punish a defendant for the exercise of a constitutional right' and that courts 'should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice.'" *Id.* at 806 (quoting USSG § 3C1.1,

comment. (n.2)).  However, perjury is a proper grounds for applying the obstruction-of-justice enhancement.  *United States v. Watkins*, 691 F.3d 841, 851 (6th Cir. 2012).

The elements of perjury are:  "(1) a false statement under oath (2) concerning a material matter (3) with the willful intent to provide false testimony."  *Id*.  A district court's determination that a defendant testified falsely and intentionally about material matters is reviewed for clear error.  *United States v. Camejo*, 333 F.3d 669, 675 (6th Cir. 2003).  The first element is easily satisfied here—Friskey testified on direct examination that there were only 75 plants; but the Government's evidence showed there were 571 plants, and the jury convicted Friskey of manufacturing at least 100 plants.  The number of plants was also material.  As the district court correctly noted, if the jury believed Friskey's testimony, it would have found that he manufactured fewer than 100 plants, and Friskey would thus not have been subjected to the mandatory minimum sentence of 60 months.  Finally, the district court did not clearly err in finding that Friskey's testimony was willful and intentional, rather than a lapse of memory.  The district court found that Friskey was adamant and specific in his testimony, and that Friskey had demonstrated throughout the trial that he was "very smart, very articulate, [and] knew exactly how many plants he had."  R. 190, PID 1855–56.

Friskey's only argument on appeal is that "his testimony regarding the amount of marijuana plants was consistent and truthful, and keeping with his position that was conveyed to the government and the Court throughout the proceedings below."  Appellant Br. at 48.  However, Friskey offers no evidence to refute the district court's finding that Friskey's testimony was false, material, and intentional.  That Friskey consistently asserted that there were only 75 plants is simply not relevant.  We are therefore satisfied that the district court did not err in applying the obstruction-of-justice enhancement.

**D. Procedural and Substantive Reasonableness**

We review whether a sentence is unreasonable "under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). A sentence is procedurally unreasonable if the district court "failed to calculate the Guidelines range properly; treated the Guidelines as mandatory; failed to consider the factors prescribed at 18 U.S.C. § 3553(a); based the sentence on clearly erroneous facts; or failed to adequately explain the sentence." *United States v. Coppenger*, 775 F.3d 799, 803 (6th Cir. 2015). To determine whether a sentence is substantively unreasonable, we consider whether the sentencing court "imposed a sentence arbitrarily, based on impermissible factors, or unreasonably weighed a pertinent factor." *Id.*

Friskey argues that his sentence is procedurally unreasonable because the district court incorrectly calculated his Guidelines range by applying the § 2D1.1(b)(1) and § 3C1.1 enhancements. Because we have determined that the district court did not err in imposing these enhancements, Friskey's procedural reasonableness argument fails.

Friskey also argues that the district court's 12-month upward variance is substantively unreasonable. Specifically, Friskey asserts that the district court weighed the number of marijuana plants and Friskey's untruthful testimony too heavily in fashioning his sentence, and that these factors were already reflected in his Guidelines calculations. However, the fact that certain conduct was addressed in the Guidelines does not preclude a district court from considering it as a basis for varying, provided that the court explains why it thinks the conduct should be given additional weight. *United States v. Nixon*, 664 F.3d 624, 626 (6th Cir. 2011). Here, the district court explained that the Guidelines range did not adequately consider the number of marijuana plants recovered. The mandatory-minimum sentence of 60 months was triggered by Friskey's manufacture of 100 or more plants. The district court reasonably found

that an upward variance was necessary to reflect the view that the 571 plants recovered constituted a more serious offense than if Friskey had manufactured only 100 plants.

Additionally, Friskey does not address the district court's other justifications for the above-Guidelines sentence. The district court found that Friskey had been growing marijuana for at least 18 months, and "was, in essence, engaged in a criminal livelihood." R. 190, PID 1866. The district court also expressed concern that Friskey fled the area after the police raided his home and was arrested and convicted of marijuana trafficking after fleeing. The court further justified the upward variance by noting that although Friskey was not subject to the ten-year mandatory-minimum sentence for repeat drug offenders because he manufactured marijuana prior to his marijuana-trafficking conviction, 21 U.S.C. § 841(b)(1)(B),[7] factually Friskey was a "two-time trafficker."

Because its consideration of these factors was reasonable, the district court did not abuse its discretion in imposing Friskey's above-Guidelines sentence.

### IV. Conclusion

For these reasons, we **AFFIRM** Friskey's conviction and sentence.

---

[7] The statute provides: "If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years . . . ." 21 U.S.C. § 841(b)(1)(B).